UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dawn Mitchell,

               Plaintiff,                       Civil No. 13-2167 (JNE/FLN)

v.                                        ORDER

Aitkin County; City of Aitkin; Anoka
County; City of Anoka; City of Arlington;
Beltrami County; City of Blaine; City of
Bloomington; City of Blue Earth; City of
Brooklyn Park; City of Cannon Falls;
Carver County; City of Champlin; Chisago
County; Cook County; City of Cottage
Grove; City of Crosby; City of Crosslake;
Dakota County; City of Edina; Freeborn
County; City of Green Isle; Hennepin
County; City of Hopkins; Kandiyohi
County; City of Lake Shore; City of
Lakeville; City of Maple Grove; City of
Maplewood; City of Marshall; McLeod
County; City of Minneapolis; City of
Minnetonka; Mower County; City of
Northfield; City of Plymouth; Ramsey
County; City of Red Wing; Rice County;
City of Rosemount; City of Roseville; City
of St. Francis; St. Louis County; City of St.
Paul; Stearns County; Steele County; City
of Wabasha; City of White Bear Lake; City
of Woodbury; Wright County; John and
Jane Does (1-300) acting in their
individual capacity as supervisors, officers,
deputies, staff, investigators, employees or
agents of the other governmental agencies;
and Entity Does (1-50) including cities,
counties, municipalities, and other entities
sited in Minnesota,

               Defendants.

Mark H. Zitzewitz, Lorenz F. Fett, Jr., Jonathan A. Strauss, and Kenneth H. Fukuda appeared for Plaintiff.

Kimberly R. Parker appeared for Defendant Ramsey County.  Jamie L. Guderian and Joseph E. Flynn appeared for Defendant Counties of Aitkin, Beltrami, Carver, Chisago, Cook, Freeborn, Kandiyohi, McLeod, Mower, Rice, Stearns, Steele, and Wright.  Andrea G. White appeared for Defendant Dakota County.  Susan M. Tindal appeared for Defendant Cities of Aitkin, Anoka, Arlington, Blaine, Bloomington, Brooklyn Park, Champlin, Cottage Grove, Crosslake, Hopkins, Lake Shore, Lakeville, Maple Grove, Maplewood, Marshall, Minnetonka, Plymouth, Red Wing, Roseville, St. Francis, Woodbury, Blue Earth, Cannon Falls, Crosby, Green Isle, Northfield, Rosemount, Wabasha, and White Bear Lake.  Bryan D. Frantz appeared for Defendant Anoka County.  Toni A. Beitz appeared for Defendant Hennepin County.  Cheri M. Sisk appeared for Defendant City of St. Paul.  Christopher Haugen appeared for Defendant City of Edina.

Plaintiff Dawn Mitchell filed the complaint in this action alleging impermissible accesses by numerous law enforcement personnel and public employees of her private data maintained by the Minnesota Department of Public Safety ("DPS").  The named Defendants include 50 different cities and counties in Minnesota.  Presently before the Court are nine motions, representing requests by the Defendants, to dismiss Plaintiff's complaint for failure to state a claim.  For the reasons stated below, the motions are granted.

## BACKGROUND

Although listing several different counts, Mitchell's complaint centers on alleged violations by the Defendants of the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-2725.  The DPPA protects certain "personal information"[1] contained in motor vehicle records.  *See* 18 U.S.C. §§ 2721-2725.  The first provision of the DPPA restricts state departments of motor vehicles ("DMVs") and their representatives by providing that they "shall not knowingly disclose or otherwise make available to any person or entity" personal

---

[1]     The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."  18 U.S.C. § 2725(3).

information "about any individual obtained by the department in connection with a motor vehicle record" except as allowed under 18 U.S.C. § 2721(b).  *Id*. § 2721(a).  The exception provision of § 2721(b) enumerates multiple permissible uses of personal information for various governmental and business purposes.  Of particular relevance to this action, the very first exemption allows a DMV to disclose or make the personal information available "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."  *Id.* § 2721(b)(1).

Beyond limiting DMVs, the DPPA also makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b)."  *Id.* § 2722(a).  The DPPA includes various enforcement mechanisms, including a criminal fine for a person who knowingly violates the Act and a civil penalty imposed by the Attorney General on a DMV with "a policy or practice of substantial noncompliance."  *Id.* § 2723.  The Act also creates a civil cause of action, *id.* § 2724, which Mitchell invokes with her complaint.

Congress enacted the DPPA in 1994, as part of the Violent Crime Control and Law Enforcement Act, Pub. L. No. 103-322, tit. XXX, amidst concern about the ease with which personal information could be obtained from state DMVs and used for criminal purposes.  *See Senne v. Vill. of Palatine*, 695 F.3d 597, 607 (7th Cir. 2012) (discussing the congressional record to conclude that "safety and security concerns" served as a central impetus for the legislation); *see also Gordon v. Softech Int'l, Inc*., 726 F.3d 42, 45 (2d Cir. 2013) (mentioning the enactment of the DPPA after the "highly publicized murder of an actress, whose stalker-cum-assailant had received her home address through an information request at a local DMV").  The DPPA also

responded to concerns related to "the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013).

The action brought by Mitchell is similar to a growing number of actions recently filed in this district[2] in which the complaint alleges DPPA violations by various Minnesota local governmental entities. With some variations, these actions represent the following basic scenario: The plaintiffs obtained reports[3] from the DPS that reveal numerous accesses of their data by various governmental and other entities. Not knowing of, or being able to readily fathom, any legitimate reason for some or all of the accesses, the plaintiffs allege DPPA violations and related claims in a single action against multiple, largely-unrelated, governmental entities. Lacking any particularized evidence of impermissible retrieval by each defendant of their personal data, the complaints refer to generalized information about unauthorized accesses of private driver's license data by law enforcement personnel. For example, a February 2013 report by the Minnesota Office of the Legislative Auditor "estimated that over half of the law enforcement users of the [Driver and Vehicle Services] Web site may have used it to perform questionable queries in fiscal year 2012." Docket No. 61-1, 39. The growing number of actions like Mitchell's has garnered local media attention.[4]

---

[2]    *See, e.g.*, Civ. Nos. 13-583, 13-860, 13-1103, 13-1889, 13-2060, 13-2119, 13-2490, 13-2512, 13-2772.

[3]    Several of the complaints mention that the plaintiffs received a letter sent out by the Minnesota Department of Natural Resources in January 2013 to several thousand individuals informing them of a former employee's "unauthorized viewing of private data" from their motor vehicle records and the letter triggered them to seek an audit of all accesses of their data. *See, e.g.*, Amended Complaint at ¶¶ 36-37, Kost v. Hunt, Civ. No. 13-583 (D. Minn. filed May 17, 2013).

[4]    *See, e.g.*, Eric Roper, *Driver's License Snooping Gets Costly for Taxpayers*, STAR TRIBUNE, Aug. 19, 2013, *http://www.startribune.com/local/west/220066801.html*; Paul Demko, *Mounting Data-Privacy Lawsuits Threaten to Swamp Governments*, POLITICS IN MINNESOTA,

According to the complaint in this action, Mitchell moved to Minnesota in 2004 and became a news anchor and sports reporter for Fox 9 News (KMSP-TV).  Compl. ¶ 68.  She currently co-anchors FOX at Five and is an anchor and reporter for Fox 9 Sports.  *Id.* ¶ 69.  She has been a sideline reporter for NFL on Fox broadcasts.  *Id.* ¶ 71.  During her career in television news, "she has met and interviewed numerous law-enforcement personnel."  *Id.* ¶ 70.

The complaint names 50 city and county defendants, along with 1-50 Entity Does, and refers to these defendants collectively as "Defendant Entities" or "Entity Defendants."  *See id.* ¶¶ 11-64.  The complaint also lists as defendants "John and Jane Does (1-300)" and describes them as "duly appointed and acting in their individual capacities as law-enforcement supervisors, officers or employees of the Defendant Entities or other state, county or municipal entities in Minnesota."  *Id.* ¶ 65.  Of this group, the complaint labels those without supervisory authority as "Individual Defendants" or "Defendant Individuals" and those with supervisory authority as "Defendant Supervisors" or "Supervisor Defendants."  *Id.* ¶¶ 66-67.

The complaint alleges that as early as 2005, Individual Defendants began looking up Mitchell's personal information on a database maintained by the Driver and Vehicle Services Division of the DPS.  *Id.* ¶ 74.  It notes that Mitchell received a letter from the Minnesota Department of Natural Resources in January 2013 informing her that her information had been impermissibly accessed by a former employee.  *Id.* ¶ 131.  She then contacted the DPS to inquire about other retrievals of her data and learned that officers and personnel from approximately 50 different departments and agencies had viewed her data approximately 219 times.  *Id.* ¶¶ 132-33.  Exhibit A to the complaint lists these retrievals of her information.  According to the complaint,

---

Sept. 20, 2013, http://politicsinminnesota.com/2013/09/mounting-data-privacy-lawsuits-threaten-to-swamp-governments/; Elizabeth Dunbar, *Lawsuit Claims Driver's License Data Improperly Accessed*, MPR NEWS, Sep. 12, 2013, http://www.mprnews.org/story/2013/09/11/news/lawsuit-driver-license-data.

"Individual Defendants used Mitchell's name, not her license plate number, to look up her private, personal information."  *Id.* ¶ 137.

The complaint alleges that the Individual Defendants viewed her protected data, "including her home address, color photograph or image, date of birth, eye color, height, weight and driver identification number."  *Id.* ¶ 125.  According to the complaint, they "accessed the information for personal reasons completely unrelated to their position as law-enforcement officers, public employees, or in their job functions."  *Id.* ¶ 124.  The complaint claims that the Defendant Entities and Defendant Supervisors "allowed their employees" to view Mitchell's personal information for unlawful purposes and "knew or should have known" that it was occurring.  *Id.* ¶¶ 144-45.  The complaint alleges that evidence exists that "illegal access is widespread and pervasive" within law enforcement and that women disproportionately form the subjects of impermissible data viewing.  *Id.*  ¶¶ 150-53, 158.  The complaint states that Mitchell has not committed any crimes that would authorize retrieval of her data and alleges the absence of "probable cause or reasonable suspicion to believe that Mitchell had engaged in any criminal activity or any activity even remotely related to criminal activity."  *Id.* ¶¶ 160-61.

Beyond these generalized allegations, the complaint does not describe any facts signaling the impropriety of the lookups by any particular Individual Defendant.  The complaint also does not identify any facts unique to any of the Entity Defendants, other than the number of retrievals of data by the officers affiliated with the entity, *see id.* at ¶¶ 75-123, and the listing of the retrievals on Exhibit A.  Based on the general allegations, the complaint asserts four counts: (1) DPPA violations against all Defendants; (2) claims under 42 U.S.C. § 1983 against Individual Defendants for violations of constitutional and statutory rights; (3) § 1983 claims against Entity

Defendants and Supervisory Defendants related to the violations of the Individual Defendants; and (4) common law invasion of privacy by all Defendants.

## DISCUSSION

Presently before the Court are nine motions filed by individual Defendant Entities or groups of them.[5]  Most of the motions seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Two motions refer to Rule 12(c).  Docket Nos. 53 and 103.  The same standard applies to a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c).  *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).

The standards applicable in ruling on a motion to dismiss are well established.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, the complaint must do more than merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery."  *Twombly*, 550 U.S. at 561 (internal quotation

---

[5] The motions before the Court are as follows: **(1)** a motion to dismiss the complaint or to sever Plaintiff's claims against it by Defendant Hennepin County, Docket No. 22; **(2)** a motion to dismiss filed by Defendant County of Anoka, Docket No. 35; **(3)** a motion to dismiss filed by Defendant Counties of Aitkin, Beltrami, Carver, Chisago, Cook, Freeborn, Kandiyohi, McLeod, Mower, Rice, Stearns, Steele, and Wright, Docket No. 42; **(4)** a motion to dismiss filed by Defendant Ramsey County, Docket No. 48; **(5)** a motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 12(c) filed by Defendant Cities of Rosemount, Aitkin, Anoka, Arlington, Blaine, Bloomington, Blue Earth, Brooklyn Park, Cannon Falls, Champlin, Cottage Grove, Crosby, Crosslake, Green Isle, Hopkins, Lake Shore, Lakeville, Maple Grove, Maplewood, Marshall, Minnetonka, Northfield, Plymouth, Red Wing, Rosemount, Roseville, St. Francis, Wabasha, White Bear Lake, and Woodbury, Docket No. 53; **(6)** a motion to dismiss or to sever Plaintiff's claims against it by Defendant City of Saint Paul, Docket No. 67; **(7)** a motion to dismiss by Defendant County of Dakota, Docket No. 69; **(8)** a motion to dismiss by Defendant City of Edina, Docket No. 82; and **(9)** a motion for judgment on the pleadings by Defendant City of Minneapolis, Docket No. 103.

7

marks omitted).  It must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In ruling on a motion to dismiss, a court accepts the facts alleged in the complaint as true and grants all reasonable inferences supported by the facts alleged in favor of the plaintiff.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009).  "This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may properly be set aside."  *Id.* (internal quotation marks omitted).

### 1.  The DPPA Claim (Count I)

As an initial matter, many of the Entity Defendants raise a statute of limitations defense to Mitchell's DPPA claims.  This Court previously reviewed the relevant law and confirmed that a four-year limitations period applies to DPPA claims and that the so-called "discovery rule" exception[6] does not apply.  *Kost v. Hunt*, Civ. No. 13-583, 2013 U.S. Dist. LEXIS 162897, at *11-23 (D. Minn. Nov. 15, 2013); *accord Rasmusson v. Chisago Cnty*, Civ. No. 12-632, 2014 U.S. Dist. LEXIS 3102, at *35-45 (D. Minn. Jan. 10, 2014).  Consequently, the statute of limitations defense eliminates Mitchell's claims related to retrievals of her data occurring earlier than four years from the filing of her complaint on August 9, 2013.  For forty Defendant Entities, Mitchell's complaint only identifies time-barred claims.  Eliminating her claims against those Defendants leaves her DPPA claims against the cities of Blaine, Edina, Hopkins, Maple Grove, Saint Paul, and Minneapolis, as well as the counties of Anoka, Freeborn, and Hennepin to be considered further.

The civil action provision of the DPPA provides as follows:

---

[6]     Under the discovery rule exception, accrual of a claim is delayed until the plaintiff discovers the cause of action or could have discovered it with reasonable diligence.  *See Gabelli v. SEC*, 133 S. Ct. 1216, 1220-21 (2013).

> A person who knowingly obtains, discloses or uses personal information, from a
> motor vehicle record, for a purpose not permitted under this chapter shall be liable
> to the individual to whom the information pertains, who may bring a civil action
> in a United States district court.

18 U.S.C. § 2724(a). As to the Individual Defendants, Mitchell's complaint alleges that they "knowingly obtained, disclosed or used Mitchell's personal information" for an impermissible purpose. Compl. ¶ 174. The complaint alleges that the Defendant Entities and Defendant Supervisors "knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Mitchell's private personal information by Individual Defendants" and that their actions "constitute a knowing disclosure of the personal information of Plaintiffs [*sic*] and others under the DPPA." *Id.* ¶¶ 178-179. The complaint also contends that the Defendant Entities are "vicariously liable for the acts of Defendant Individuals." *Id.* ¶ 182.

Because Mitchell's claims against a given entity depend on her claims against the Individual Defendants employed by that entity,[7] to survive the present motions, for each of the remaining Entity Defendants, Mitchell must meet her burden of pleading that its employees knowingly obtained, disclosed, or used Mitchell's personal information for an impermissible purpose. *See* 18 U.S.C. § 2724(a); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1110-14 (11th Cir. 2008) (analyzing the statutory language and structure in detail to confirm that the plaintiff has the burden of establishing an impermissible purpose). Mitchell's complaint must satisfy her burden at the pleading stage by alleging an impermissible purpose with adequate facts to support the allegation. *See, e.g.*, *Lancaster v. City*

---

[7] Other district courts have concluded that municipalities may be held vicariously liable for their employees' violations of the DPPA. *See, e.g.*, *Margan v. Niles*, 250 F. Supp. 2d 63, 72-75 (N.D.N.Y. 2003). The parties do not raise the issue, and in light of the disposition on other grounds, the Court does not reach it.

*of Pleasanton*, Civ. No. 12-5267, 2013 U.S. Dist. LEXIS 131379, at *7-16 (N.D. Cal. Sept. 13, 2013); *Foos v. Verizon Bus. Network Servs.*, Civ. No. 10-CV-3040, 2010 U.S. Dist. LEXIS 100140, at *10-18 (D. Or. Sept. 22, 2010); *Briggman v. Ross*, Civ. No. 5-09-00040, 2009 U.S. Dist. LEXIS 94634, at *4-8 (W.D. Va. Oct. 9, 2009).

Moreover, Mitchell must meet her burden in light of the significant exemption for operations of governmental agencies. *See* 18 U.S.C. § 2721(b)(1); *Kost*, 2013 U.S. Dist. LEXIS 162897, at *33-36. As this Court previously explained, the provision of § 2721(b) that allows for "use by any government agency" of personal information protected by the DPPA differs materially from the other exceptions in § 2721(b). *Kost*, 2013 U.S. Dist. LEXIS 162897, at *33-36. The government use provision broadly allows for use by the government agency "in carrying out its functions" as compared to other provisions that include more specific qualifications or limitations. *See, e.g.*, 18 U.S.C. § 2721(b)(3) (restricting "use in the normal course of business by a legitimate business" to particular uses); *id.* § 2721(b)(6) (limiting insurance-related parties to uses "in connection with claims investigation activities, antifraud activities, rating or underwriting"). Also, unlike the exemption of § 2721(b)(4) for data uses in connection with court and agency proceedings, the government use provision does not include specific examples suggestive of limited categories of activities covered by the provision. In evaluating the scope of § 2721(b)(4), the Supreme Court pointed to its enumeration of specific examples as indicative and restrictive of the type of conduct "in connection with" litigation that the exemption covers. *See Maracich*, 133 S. Ct. at 2201-02.

The Defendants contend that Mitchell's complaint fails to plead adequate facts as to each of them showing that her personal information was obtained, disclosed, or used for an impermissible purpose. In support of that contention, some of the Defendants argue that the

language in 18 U.S.C. § 2724(a) of "obtains, discloses or uses" should be construed to exclude

mere viewing of information.  *See* Docket No. 56, 4-15.  In responding to that argument, Plaintiff

claims that these Defendants "seek to have this Court declare unenforceable" the DPPA

"provisions found enforceable by the Supreme Court" in *Reno v. Condon*, 528 U.S. 141 (2000).

Docket No. 78, 10-12.  The Court reads the Defendants' argument not as raising a

constitutionality question,[8] but rather as seeking a particular interpretation of language that they

contend is ambiguous in the statute.  The Court, however, need not focus on the language of

"obtains, discloses or uses," because Mitchell's complaint does not meet the part of 18 U.S.C. §

2724(a) that requires showing that the Defendants' accesses of her data were "for a purpose not

permitted."

      The complaint is devoid of any facts that adequately support the alleged impropriety of

the data retrievals by any particular Individual Defendant or Defendant Entity.  Exhibit A to the

complaint contains the only information specific to each of the Entity Defendants, along with the

tallies of the accesses by each Defendant Entity in the body of the complaint, which include

time-barred accesses.  For the Entity Defendants with data retrievals not subject to a time-bar,

the relevant entries from Exhibit A are summarized below:

---

[8]     If the Defendants were challenging the constitutionality of the law, they would have been required to provide notice to the Attorney General of the United States. Fed. R. Civ. P. 5.1(a); *see also* Fed. R. Civ. P. 5.1(b) (requiring a court to certify to the Attorney General, under 28 U.S.C. § 2403, that the constitutionality of a statute has been questioned). The Court acknowledges, but need not make any determinations on, a potential constitutionality question lurking behind Mitchell's position.  In *Reno* the Supreme Court found the DPPA to be a constitutional exercise of Congress's power under the Commerce Clause, explaining that "drivers' personal information is, *in the context of this case*, an article in interstate commerce." 528 U.S. at 148-149 (emphasis added). The particular context at issue in *Reno* dealt with a state's dissemination of motor vehicle information to the general public—a clear act of supplying the information into interstate commerce.  *See id.* at 147, 151. The scenarios targeted by Mitchell's complaint—i.e., retrievals of data by local law enforcement agencies within a state from that state's DMV without further disclosure or external application—potentially represent a materially different context.

| Defendant | Exhibit A Entries Not Time-barred |
|-----------|-----------------------------------|
| Hennepin County | 11/19/2009 (3)[9] |
| Anoka County | 6/29/2010 (3); 3/25/2011 (2) |
| Freeborn | 2/10/2012 |
| Blaine | 7/5/2010 |
| Hopkins | 4/14/2010 (2) |
| Maple Grove | 10/22/2009 (2); 11/24/2009 (4) |
| Saint Paul | 9/30/2009 (3) |
| Edina | 10/1/2009 (3); 10/4/2009; 7/19/2010; 9/6/2011; 10/10/2011; 12/21/2011 |
| Minneapolis | 9/25/2010; 12/10/2010 |

Mitchell's complaint alleges that each of the identified retrievals of her data was impermissible.  To support her position that the complaint adequately alleges the impropriety of the retrievals, Mitchell points out that the exhibit entries correspond to lookups by a name—rather than by a license plate—of Mitchell's information by the Defendants.[10]  Mitchell notes the complaint's mention of widespread abuse of motor vehicle record data by law enforcement personnel.  She also points to the complaint's allegations about her status as a television personality and her lack of involvement in any criminal activity.  She contends that these facts alleged in the complaint support her claim of impermissibility of the accesses and she "will seek to establish that many of the males accessing her information were doing so in large part due to her gender and physical attractions."  Docket No. 80, 14-16.

A fundamental shortcoming, however, with the facts on which Mitchell relies is that they do not reflect an outward manifestation of the alleged impermissible purpose of any Individual Defendant.  Rather, accepting Mitchell's position requires drawing inferences about what went

[9]    According to Defendant Hennepin County, the three entries on Exhibit A to the complaint for "Edina Driver's License Office" are attributable to it.  Docket No. 25, 5.
[10]    Defendant City of Edina contends that each of the retrievals by name listed for it on Exhibit A to Plaintiff's complaint was preceded by a license plate lookup.  Docket No. 101, 2.  At the hearing on the present motions, counsel also noted that multiple people with the name "Dawn Mitchell" exist, questioning whether a name lookup could be accepted as specifically targeting Plaintiff Dawn Mitchell.  At this stage, the Court resolves these fact issues in Plaintiff's favor.

on in a particular officer's mind in connection with a particular lookup, based on assumptions about law enforcement officers generally and contentions about Mitchell personally. Determining the adequacy of the pleading of a DPPA claim by drawing such inferences is unacceptable for at least two reasons.

First, generalized facts about the impropriety of some portion of data retrievals by some segment of law enforcement officers fails to take a claim of a right to relief based on a particular officer's actions above the speculative level. To survive a motion to dismiss, "a complaint must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp*., 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). Mitchell's complaint only alleges that "illegal access is widespread and pervasive throughout departments." Compl. ¶ 150. The Minnesota Legislative Auditor's report referenced in the complaint only confirms that a significant percentage of officers have made questionable queries of driver's license information. It does not reflect information about any individual officer and does not even quantify the percentage of all queries that have been questionable.[11] Mitchell's DPPA claims, however, relate to particular retrievals of her personal information by individual officers. Her claims against them need to be assessed individually and separately. *Cf. Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006) ("Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed."). She therefore needs to allege facts reflecting the impropriety of the data retrieval by each individual officer to raise her claim against the officer above a

---

[11]    Although the report estimates that over half of law enforcement officers made questionable queries of driver's license data in 2012, it does not quantify the percentage of the total queries by those officers that were questionable. Docket No. 61-1, 39. Moreover, the report flagged 9% of officers for disproportionately querying individuals of one sex—the category of questionable queries relevant to Mitchell's position—in 2012. *Id.*

speculative level.  *See Iqbal*, 556 U.S. at 678 (noting that a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Second, relying on facts about the plaintiff, as Mitchell does, provides no coherent and workable way to distinguish between DPPA claims that should survive a motion to dismiss and those that should not.  The facts alleged in Mitchell's complaint, especially in light of the Legislative Auditor's report, make it very plausible that at least some law enforcement personnel have looked up women's, and maybe especially attractive women's, motor vehicle data without a permissible reason for doing so.  Mitchell could perhaps reasonably speculate that she is one of those women.  But many other women could also reasonably make the same speculation.  While Mitchell has the added characteristic of being on television, many women can claim varying levels of fame or a public presence.[12]  Thus, to accept Mitchell's position would entail accepting that every woman with no criminal background and some unspecified level of fame and/or attractiveness can state a DPPA claim against any local governmental entity with an employee that accessed her data, even in the absence of any external manifestation of the employee's alleged improper purpose.

That is a position that the Court cannot accept.  To do so would necessitate one of two equally untenable outcomes that there is no indication Congress intended when it enacted a civil action provision as part of the DPPA.  The first potential consequence would be to have courts make determinations as to whether a given plaintiff is attractive enough, famous enough, or has enough of a history and countenance that place her outside the realm of reasonable interest in

---

[12]     For example, in *Kost*, one of the plaintiffs noted that she had received some publicity based on a newspaper article that featured her and a television interview that she had given.  *See* 2013 U.S. Dist. LEXIS 162897, at *3-4.

connection with criminal activity such that she can state a DPPA claim—a task for which at least

this Court is not qualified.  Needless to say, such a proposition would also raise a host of other

problems.

To avoid those problems, the second option would be to allow any person whose data has

been retrieved by a governmental entity to proceed with a DPPA action, at least until the

defendant provides the reason for accessing the plaintiff's data.  In other words, the civil action

provision of the DPPA would need to be read as creating a right to learn of the reason for any

personal data retrieval by a governmental agency defendant.  But the plain language of the

statute does not create that right.  *See* 18 U.S.C. 2724(a).  Neither does the statute imply it,

because the burden of establishing an impermissible purpose lies with the plaintiff, as discussed

above.  *See Thomas*, 525 F.3d at 1110-14.  Additionally, as this Court has previously noted,

finding that the DPPA creates a broad and automatic entitlement to discovery of the reasons a

law enforcement officer retrieves an individual's personal information would contravene the

acknowledged discretion that has been recognized for law enforcement activities.  *See Kost v.

Hunt*, Civ. No. 13-583, 2013 U.S. Dist. LEXIS 145148, at *13-14 (D. Minn. Oct. 8, 2013).

Nothing about the statute or its congressional record suggests that Congress intended that result.

To the contrary, the legislative history reflects "a desire to preserve broad discretion for law

enforcement agents to retrieve information in the course of their duties."  *Smythe v. City of

Onamia*, Civ. No. 12-03149, 2013 U.S. Dist. LEXIS 78948, at *14 (D. Minn. June 5, 2013).

Mitchell's complaint does not include any allegations reflecting an impermissible

purpose beyond contentions about a subset of actions of a segment of officers generally and her

beliefs about the interest in her of the particular officers who retrieved her data.  Her allegations

differ in this regard from cases where claims of impermissible purpose have risen above the

speculative level.  Such cases generally included some indication of a connection or interaction between an identifiable law enforcement officer and the plaintiff, from which the asserted impropriety of the officer's retrieval of the plaintiff's data can be plausibly inferred.  *See, e.g.*, *Smythe*, 2013 U.S. Dist. LEXIS 78948, at *9-20 ("a long and complicated history" existed between the plaintiff and officer such that the complaint alleged specific facts reflecting that the officer retrieved the plaintiff's information "for something other than a law enforcement function on at least one occasion"); *Schierts v. City of Brookfield*, 868 F. Supp. 2d 818, 819-21 (E.D. Wis. 2012) (plaintiff dated a third-party to whom an officer provided plaintiff's address and plaintiff learned of the officer's communications when plaintiff accessed the third-party's email account); *Menghi v. Hart*, 745 F. Supp. 2d 89, 96-97 (E.D.N.Y. 2010) (officer arrested plaintiff for driving under the influence and plaintiff subsequently received harassing and threatening phone calls, which an investigation traced to the officer prior to the suit).  In those cases, the facts[13] allowed for an external basis—in the form of the officer's subsequent actions—to probe the propriety of the prior retrieval of information.  Mitchell's claim differs in that the allegations of her complaint reference only retrieval of her protected information.  The nature of Mitchell's claims therefore effectively renders the "for a purpose not permitted" language of the DPPA's civil action provision an element purely of subjective intent of the defendant.

As the Supreme Court has recognized, a "potentially serious problem" exists when a claim against a public official turns on improper intent, "because an official's state of mind is easy to allege and hard to disprove."  *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998). Under such circumstances, insubstantial cases may be less amenable to summary disposition and

---

[13]    Although *Shierts* and *Menghi* represent decisions at a stage later than a motion to dismiss, the discussion in the opinions reflects that the plaintiff could rely on the relevant facts at the time of the filing of the complaint.

"therefore implicate[] obvious concerns with the social costs of subjecting public officials to discovery and trial, as well as liability for damages." *Id.* In *Crawford*, the United States Court of Appeals for the District of Columbia Circuit had held, in relevant part, that plaintiffs who allege that government officials acted with "unconstitutional intent" do not need to satisfy any heightened pleading requirement and may rely on circumstantial as well as direct evidence, but "in order to prevail in an unconstitutional-motive case, the plaintiff must establish that motive by clear and convincing evidence." *Id.* at 582-83. The Supreme Court disagreed that a heightened burden of proof applied. *Id.* at 589.

The Court went on, however, to comment on the "existing procedures available to federal trial judges in handling claims that involve examination of an official's state of mind" in light of the potential problems presented by those claims. *Id.* at 597-98. It noted that in such cases a district court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Id.* One of the options for doing so is to "insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Id.*

Where the gravamen of the complaint is impropriety existing solely in the mind of a government actor whose job provides general access to the protected data—i.e. a defendant who implicates the exception of 18 U.S.C. § 2721(b)—it is consistent with the Supreme Court's admonition as well as the language of the DPPA to require a threshold showing of some external manifestation of the asserted impermissible purpose. Neither the DPPA nor its legislative history betray any congressional intent for the civil action provision to operate as a means of policing the conditions under which local government actors, with legitimate access to the data, merely view

it.  When Congress meant to focus a restriction on the mere viewing of citizens' personal

information, including by those with legitimate access, it has done so explicitly.  *See* 26 U.S.C. §

7431(a)(1) (allowing for a civil action for damages by a taxpayer, when an employee of the

United States "knowingly, or by reason of negligence, *inspects* or discloses any return or return

information" about the taxpayer in violation of the applicable provisions) (emphasis added).

Congress enacted the DPPA primarily as a response to concerns about the "threat from

stalkers and criminals who could acquire personal information from state DMVs" and the sale of

"personal information to businesses engaged in direct marketing and solicitation." *Maracich*,

133 S. Ct. at 2198.  By its nature, the DPPA affords a certain level of privacy protection, but it is

a circumscribed one.  *See Margan v. Niles*, 250 F. Supp. 2d 63, 68 n.4 (N.D.N.Y. 2003) (noting

that "the DPPA was a crime fighting measure; not a general privacy protection measure").

While the DPPA does not immunize local governmental actors with regard to anything they do

with protected information to which they have access, it also does not require them to explain—

or a federal court to pass judgment on—every instance of retrieval of an individual's personal

data, in the absence of outwardly discernable facts rendering the impropriety of a particular

officer's actions plausible.

## 2.  Claims Under 42 U.S.C. § 1983  (Counts II and III)

The Court has previously held that claims under 42 U.S.C. § 1983 are unavailable for

violations of any statutory or constitutional rights under facts analogous to those alleged in the

complaint.  *See Kiminski v. Hunt*, Civ. No. 13-185, 2013 U.S. Dist. LEXIS 157829, at *25-42

(D. Minn. Sept. 20, 2013); *see also Kost*, 2013 U.S. Dist. LEXIS 145148, at *15-16.  In

particular, the DPPA's comprehensive remedial scheme and comparatively limited private cause

of action confirm that Congress did not intend to leave claims under § 1983 available to enforce

any statutory rights created by the DPPA.  *Kiminski*, 2013 U.S. Dist. LEXIS 157829, at *27-39.

The facts alleged in the complaint also do not implicate a potential violation of any constitutional

rights.  *See id.* at *39-42; *Bass v. Anoka County*, Civ. No. 13-860, 2014 U.S. Dist. LEXIS 21846,

at *14-19 (D. Minn. Feb. 21, 2014).  Counts II and III will be dismissed for the reasons stated in

the *Kiminski* and *Kost* orders.  *See also Rasmusson*, 2014 U.S. Dist. LEXIS 3102, at *11-29

(dismissing claims asserted under § 1983 for alleged impermissible retrievals of motor vehicle

record data); *Nelson v. Jesson*, Civ. No. 13-340, 2013 U.S. Dist. LEXIS 156711, at *9-21 (D.

Minn. Nov. 1, 2013) (same).

### 3.   State Law Claim for Invasion of Privacy (Count IV)

Mitchell's claim for invasion of privacy is a state law claim. The basis for the Court's

jurisdiction over this claim is 28 U.S.C. § 1367(a) (2012), which permits a district court to

exercise supplemental jurisdiction over claims that are part of the same case or controversy as

the claims that fall within the district court's original jurisdiction. A district court may, in its

discretion, decline to exercise supplemental jurisdiction when "all claims over which it has

original jurisdiction" have been dismissed.  *Id*. § 1367(c)(3); *see Franklin v. Zain*, 152 F.3d 783,

786 (8th Cir. 1998).  In this case, the Court is dismissing the claims that fall within the Court's

original jurisdiction.  The Court declines to exercise supplemental jurisdiction over, and

therefore dismisses without prejudice, Mitchell's state law claim for invasion of privacy.

### CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.     Defendant Hennepin County's Motion to Dismiss [Docket No. 22] is GRANTED.

2.     Defendant County of Anoka's Motion to Dismiss [Docket No. 35] is GRANTED.

3.      The Motion to Dismiss [Docket No. 42] of Defendant Counties of Aitkin, Beltrami, Carver, Chisago, Cook, Freeborn, Kandiyohi, McLeod, Mower, Rice, Stearns, Steele, and Wright is GRANTED.

4.      Defendant Ramsey County's Motion to Dismiss [Docket No. 48] is GRANTED.

5.      The Motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 12(c) [Docket No. 53] of Defendant Cities of Rosemount, Aitkin, Anoka, Arlington, Blaine, Bloomington, Blue Earth, Brooklyn Park, Cannon Falls, Champlin, Cottage Grove, Crosby, Crosslake, Green Isle, Hopkins, Lake Shore, Lakeville, Maple Grove, Maplewood, Marshall, Minnetonka, Northfield, Plymouth, Red Wing, Rosemount, Roseville, St. Francis, Wabasha, White Bear Lake, and Woodbury is GRANTED.

6.      Defendant City of Saint Paul's Motion to Dismiss [Docket No. 67] is GRANTED.

7.      Defendant County of Dakota's Motion to Dismiss [Docket No. 69] is GRANTED.

8.      Defendant City of Edina's Motion to Dismiss [Docket No. 82] is GRANTED.

9.      Defendant City of Minneapolis's Motion for Judgment on the Pleadings [Docket No. 103] is GRANTED.

10.     Plaintiff's Complaint is DISMISSED without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  February 27, 2014                        s/Joan N. Ericksen
                                                 JOAN N. ERICKSEN
                                                 United States District Judge