## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dawn Mitchell, | Civil File No.: 13-CV-02167 (JNE/FLN) |
| Plaintiff, | |
| vs. | **DEFENDANT CITY OF EDINA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Aitkin, City of, et al., | |
| Defendants. | |

This Court should grant Defendant City of Edina's (the "City") motion for summary judgment. The undisputed facts establish that every time the DVS database was accessed, the Officer in question was on duty and it was immediately after a vehicle license plate number search. Further, the Officers have set forth legitimate reasons demonstrating why they would access multiple databases. In order for Plaintiff to defeat this motion, this Court would have to find that each Officer somehow knew or divined Plaintiff's driver's license plate number, even though all except one of them had never heard of her or knew who she was. This scenario is entirely implausible. No reasonable jury could not glean, much less conclude, from the material, undisputed evidence that the accesses were for an impermissible purpose without unadulterated speculation. For these reasons, this Court should grant the City's motion for summary judgment.

## UNDISPUTED FACTS

The "facts" set forth by Plaintiff are entirely inconsistent with the record and are too numerous to highlight here. Plaintiff's "facts" and consequently argument also deal with

DVS searches of individuals other than Plaintiff which are entirely irrelevant in this action. There are, however, several key facts that remain undisputed and would entitle this Court to grant the City's motion for summary judgment. The material facts, taken together, cannot sufficiently support a plausible claim that Plaintiff's records were accessed for an impermissible purpose.

### A. THE OFFICERS WERE ON PATROL DURING EACH OF THE PERMISSIBLE ACCESSES.

Every time Plaintiff's information was accessed, the Officer accessing the information was on patrol. Officer Melander accessed Plaintiff's information on October 1, 2009 while on duty from 1800-0600. Officer Schultz accessed Plaintiff's information on October 4, 2009 while on duty from 1800-0600. Officer Hubbard accessed Plaintiff's information on July 19, 2010 while on duty from 1500-0600. Officer Hubbard accessed Plaintiff's information on September 6, 2011 while on duty from 1800-2300. Officer Wagner accessed Plaintiff's information on October 10, 2011 while on duty from 0600-1400. Officer Buell accessed Plaintiff's information while on duty from 1800-0600.

### B. THE ACCESSES WERE INITIATED BY VEHICLE LICENSE PLATE NUMBER, NOT NAME.

The record unequivocally establishes that every time an Officer conducted a DVS database search, it was immediately after the Officer conducted a search of Plaintiff's vehicle's license plate number. On October 1, 2009, Officer Melander ran a license plate query at 23:12:56 and then a DVS query at 23:13, 23:44, and 23:44. On October 4, 2009, Officer Schultz ran a license plate query at 22:45:05 and then a DVS query at 22:46. On July 19, 2010, Officer Hubbard ran a license plate query at 18:43:13 and then a DVS query

18:44. On September 6, 2011, Officer Hubbard ran a license plate query at 22:45:32 and then a DVS query at 22:46. On October 10, 2011, Officer Wagner ran a license plate query at 11:53:38 and then a DVS query at 11:54. On December 20, 2011, Officer Buell ran a license plate query at 23:57:14 and then a DVS query at 0:01. Every single DVS accesses was preceded by a vehicle license plate number search.

### C. THERE ARE LEGITIMATE PURPOSES FOR CONDUCTING A VEHICLE LICENSE PLATE NUMBER SEARCH AND A DVS DATABASE SEARCH.

Although Plaintiff now tries to misstate the deposition testimony and insinuate that there is no reason an Officer would conduct a license plate search and a DVS database search, it is without merit. There is significant testimony regarding why an Officer would run both searches while on patrol.

Officer Melander testified that it was often his practice to run a separate DVS query after a BCA license plate query.

> Q. Okay. And you don't need a photo to determine from the information provided whether or not somebody has a warrant out for their arrest?
>
> A. No. You need a photo to help determine whether or not that appears to be the registered owner driving the vehicle.
>
> *   *   *
>
> Q. Okay. In your practice and experience in 2009, again performing this traffic enforcement function we're talking about, was it your practice to run separate DVS queries after you had run a BCA license plate query?
>
> A. Quite often, yes.
>
> Q. And what would be the reason when that would happen or why you would need to do that?

3

> A. It would be a lot of reasons. First reason is oftentimes the information is different in both databases. So there were times when I could run you in the BCA system and it would say that your driver's license was suspended. I could run it in the DVS system and it would show it was valid, so there was a time delay in the entry. Or vice versa, you could run the normal BCA and if the driver's license information comes back valid, run it in DVS and then it says suspended or pending or there's some action being taken.
>
> \* \* \*
>
> Q. Okay. Was it your practice then to confirm whether or not a driver's license was valid that you would always run first a BCA and then DVS, or would something have to appear in the BCA information to cause you to go to DVS?
>
> A. Both.

(Hodkinson Decl. Ex. E at 30:16-32:32:14).

Officer Schultz similarly testified that he frequently ran both searches and that there would be a legitimate purpose for doing so.

> Q. Okay. And as part of your typical protocol in running license plate searches, what is it that you're looking for in the information that's returned to you in the BCA database?
>
> \* \* \*
>
> A. Does the plate match the vehicle, is the registration current, is the RO valid, is the vehicle stolen, are there any warrants, anything else that would draw our attention that doesn't match what we're seeing in front of us.
>
> \* \* \*
>
> Q. If you ran a license plate and the license plate matched the vehicle information that you saw and if the registration was valid and if the registered owner's driver's license number was valid and if the vehicle wasn't stolen and if there weren't any warrants out, is there any follow-up you would typically do with that kind of return?
>
> A. Yeah, there could be.

> Q. What would you typically do in that situation where all of that came back with nothing suspicious?
>
> A. It depended on if I was following them and they were speeding, I may stop them for speeding, or if they had an equipment violation or they were speeding and I may want to see what their record is so I may look up further to see if they have any prior speeds or any other law enforcement contacts.
>
> Q. Okay. So in that first list of things where I've proposed nothing came back suspicious, you said there are other reasons why you might do an additional query?
>
> \*   \*   \*
>
> A. . . . Yes.

(Hodkinson Decl. Ex. F at 22:10-23:21).

> Q. Okay. How frequently did you as a normal practice jump between systems between the BCA system when you were requesting license plate information and the DVS system?
>
> \*   \*   \*
>
> A. I would say pretty frequently.
>
> \*   \*   \*
>
> Q. Okay. So if this was an ordinary shift would you have expected that following the normal practice that you would have been accessing both the BCA and the DVS system periodically throughout that shift?
>
> A. Yeah, I would say periodically, definitely not ever one of them, but I would say periodically it was common.

(Hodkinson Decl. Ex. F at 25:20-26:12).

Officer Hubbard also provided testimony that there are reasons that a separate search, to reveal a photograph, may be necessary.

5

> Q. Okay. In the July 2010 time frame would a license plate search in the BCA system reveal any photographs of the registered owner?
>
> A. It would not.
>
> Q. In the instances that you described where you would find a reason or have a reason to run a license plate either because of driving conduct or the location of a vehicle, is there a reason why you would need to see a photograph of a person?
>
> A. Yes, there certainly may be reasons in that time frame.
>
> Q. Okay. And what would those reasons be?
>
> A. If we - - the demographic information that you get when you run a driver's license is pretty limiting in what you get in terms of physical description and so if you're trying to determine if the person that you're - - that if the person that shows up when you run the registration, when you're trying to determine is that the person, if you have someone who is 5'10", 250 pounds with brown hair, and blue eyes, when you're in a vehicle driving a squad car it's - - you're gonna be hard pressed sometimes to tell if that's the person that is seated in that car. So certainly a picture is going to help you know if that's the person that is driving the car.

(Hodkinson Decl. Ex. G at 22:3-23:3).

Four of the Officers did not know who Plaintiff was and only one recalled he had seen her on television. Each Officer testified that they never accessed information on television personalities or public figures. And, each officer testified the access was for legitimate reasons.

**C. THE CITY CONDUCTED AN INVESTIGATION FOLLOWING NOTICE OF THIS CLAIM.**

Plaintiff's allegations that the City did not investigate the Officers' conduct and accesses after notice of this suit is erroneous. After the City received notices of claims, with the assistance of counsel, it obtained information from that State which showed that

vehicle license plate number searches were done immediately before each alleged improper DVS access. (Hodkinson Decl. Ex. D at 75:12-81:21). And, the City confirmed that each of the five Officers were working at the time of the accesses and out on patrol. (*Id*. at 81:18-21).

      **D.**    **PLAINTIFF'S ASSERTION THAT SHE WAS WORKING DURING THE ACCESSES IS SPECULATIVE.**

Finally, on the occasions on which Plaintiff claims she was working when her vehicle license plate number was ran, those assertions are speculative, at best. Plaintiff testified that she gets off work at various times. (Hodkinson Decl. Ex. C at 51:13-15). And, Plaintiff cannot remember when she actually left work on the specific dates her information was accessed and none of the materials produced by Plaintiff show specifically when she left work. (*Id*. at 57:25, 58:1-18). The only definitive evidence presented by either party is that each Officer was on patrol during a shift and that each Officer ran the vehicle license plate number search prior to a DVS query.

## ARGUMENT

      **I.**    **PLAINTIFF CANNOT MEET HER BURDEN TO SHOW ANY VIOLATIONS OF THE DPPA.**

Plaintiff cannot meet her burden to demonstrate that there are any genuine issues of material fact as to whether the information accessed was for a purpose not permitted. Here, Plaintiff has the burden to prove that the City: (1) knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted. Plaintiff has failed to set forth any adequate evidence from which a reasonable jury could determine that the purpose of the access was impermissible without conjecture.

7

Plaintiff bears the burden of making a showing of an impermissible purpose. *Kost v. Hunt*, 983 F.Supp. 2d 1121, 1134 (D. Minn. 2013) (citing Fed. R. Civ. P. 8(a)). Courts cannot speculate and conclude, without sufficient evidence, that the purposes of law enforcement personnel were impermissible. *Potocnik v. Anoka County*, 2014 U.S. Dist. LEXIS 21845, *11 (D. Minn. 2014). Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" are insufficient to set forth a cause of action. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The complaint must allege facts that support an inference that accesses were for an improper purpose rather than a permissible purpose by a government agency in carrying out its functions. *Kost v. Hunt*, 983 F.Supp. 2d 1121, 1134 (D. Minn. 2013). Although the nonmoving party may be entitled to reasonable inferences, "a reasonable inference is one which may be drawn from the evidence without resort to speculation." *Kinserlow v. SMI Corp.*, 217 F.3d 1021, 1026 (8th Cir. 2000).

Plaintiff lacks any sufficient concrete or even circumstantial evidence that the accesses were impermissible. Plaintiff baldly states that the accesses were impermissible without setting forth any evidence that would lead a reasonable jury to conclude so without pure speculation. Notably, in order for Plaintiff's allegations to be true, each of the Officers would have had to have known, divined or guessed Plaintiff's vehicle's license plate number, run that number in a license plate search, and then conduct a DVS query. Even with inferences favoring Plaintiff, any finding of a violation is implausible without resort to speculation. The simple fact is that the genesis of the accesses were observation of a vehicle and a search of its license plate number.

Further, Plaintiff's reliance on *Mallak* is misplaced. First, as outlined above, each of the Officers was on duty at the time of the alleged impermissible access. Additionally, each Officer accessed the DVS information only after running a license plate search. Coversly, in *Mallack*, Plaintiff's information was accessed after the Officers searched by name, not license plate number. *Mallak v. Aitkin County*, 9 F. Supp. 2d 1046, 1058, 2014 U.S. Dist. LEXIS 43349 (D. Minn. March 31, 2014). The Court then held that even then, the allegations were sparse and permitted limited discovery to take place. The Court went on to hold that "a search by driver's license number (as opposed to a search by name) reasonably implicates a number of legitimate law enforcement concerns." *Id*. at *29.

*Mallak v. City of Brainerd* ultimately came before the Court on summary judgment following the limited discovery. 2017 U.S. Dist. LEXIS 134638 (D. Minn. 2017). The Court granted an Officer's summary judgment motion in circumstances nearly identical to the facts in this case. The Court held that "[t]o support an inference of an impermissible purpose, a factfinder would be required to speculate . . ." *Id*. at *41. It went on to state that "the facts developed in discovery indicate that [the Officer] looked up Plaintiff's DVS record immediately following a lookup of a license plate associated with Plaintiff's Honda Accord . . . These facts further undermine the reasonableness of any inference that [the Officer] accessed Plaintiff's DVS record out of curiosity…" *Id.* at FN 13. Similarly, here, the jury would be required to speculate to determine that the Officers accessed Plaintiff's information for an impermissible purpose. A reasonable jury could not conclude the accesses were impermissible based on the information before it because each access was preceded by a license plate number search.

Lastly, Plaintiff's argument that there is no legitimate reason to run a vehicle license plate number search and a DVS query is completely contrary to the testimony provided by the Officers **and is not supported by any independent or other authority**. The Officers provided numerous legitimate, permissible reasons, for why they would conduct both searches. As each Officer was on duty at the time of the search, and the accesses were not initiated by name, the only conclusion a reasonable jury could reach from this evidence is that the accesses were proper.

## II. THE CITY CANNOT BE VICARIOUSLY LIABLE IN THE ABSENCE OF ANY PROOF THAT THE OFFICERS ARE LIABLE.

The City is entitled to dismissal because Plaintiff has not established, despite her burden, an impermissible purpose and the City has demonstrated permissible purposes. If the defendant demonstrates they had a permissible purpose, or if the plaintiff fails to present any facts supporting her contention that they had an improper purpose, the defendant is entitled to qualified immunity from Plaintiff's DPPA claims. *Rollins v. City of Albert Lea*, 79 F. Supp. 3d 946 (D. Minn. 2014).

Because the Officers are entitled to qualified immunity, the City cannot be vicariously liable and is entitled to a dismissal as a matter of law.

## CONCLUSION

For these reasons, Defendant City of Edina respectfully requests this Court grant its motion to dismiss all of Plaintiff's claims with prejudice and allow the City its costs, disbursements and attorney's fees.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | HELEY, DUNCAN & MELANDER, PLLP |
| Dated: November 3, 2017 | By:*/s/ Mark P. Hodkinson*<br>    Mark P. Hodkinson (#159189)<br>8500 Normadale Lake Boulevard<br>Suite 2110<br>Minneapolis, MN 55437<br>Telephone: (952) 841-2506<br>Facsimile: (952) 841-0041<br>mhodkinson@heleyduncan.com<br>*Attorneys for Defendant  City of Edina* |