UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dawn Mitchell,

        Plaintiff,

v.                                                                 Case No. 13-cv-2167 (JNE/FLN)
                                                                    ORDER

Aitkin County, et al.,

        Defendant.

---

Jonathan Strauss, Sapientia Law Group PLLC, appeared for Dawn Mitchell.

Mark Hodkinson, Heley, Duncan & Melander, PLLP, appeared for the City of Edina.

---

Dawn Mitchell alleges that City of Edina police officers improperly accessed her personal information on seven occasions in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725. Edina has moved for summary judgment, arguing that (a) there was no DPPA violation because Mitchell has not shown that the accesses were for an impermissible purpose, (b) the officers have qualified immunity, and (c) Edina is not directly or vicariously liable for the conduct of its officers under the DPPA. For the reasons set forth below, the motion is granted in part and denied in part.

1

**BACKGROUND**

Mitchell has been a news anchor and sports reports for the Fox 9 television station for more than a decade. In January 2013, she received a notification from the Department of Natural Resources that a former employee had impermissibly accessed her personal information from a database maintained by the Driver and Vehicle Services ("DVS") division of the Department of Public Safety ("DPS"). Mitchell subsequently requested an audit from DPS about other retrievals of her data. The audit revealed that her personal DVS information had been viewed approximately 219 times by roughly 50 different entities between 2005 and 2013. Because she had little or no direct contact with law enforcement personnel associated with these police departments or cities, Mitchell believed the obtainments of her DVS information were improper. Mitchell Dep. 8-9.

In August 2013, Mitchell brought suit against the entities under the DPPA, 42 U.S.C. § 1983, and state privacy law. This Court's March 4, 2014 Order dismissed all of the counts of her complaint. Mitchell appealed, and in August 2015, the Eighth Circuit Court of Appeals reversed the dismissal of Mitchell's timely DPPA claims against the cities of Edina and Minneapolis. *McDonough v. Anoka Cty.*, 799 F.3d 931 (8th Cir. 2015).

At issue now are seven DVS queries (or "accesses") made by five Edina police officers between October 2009 and December 2011. Those accesses are summarized below:

2

| **DATE** | **OFFICER** | **ACCESS TYPE** | **TIME** |
|---|---|---|---|
| Oct. 1, 2009 | Melander | License Plate Query<br>DVS Query | 11:12 PM<br>11:13 PM |
| Oct. 1, 2009 | Melander | DVS Query | 11:44 PM[1] |
| Oct. 4, 2009 | Schultz | License Plate Query<br>DVS Query | 10:45 PM<br>10:46 PM |
| July 19, 2010 | Hubbard | License Plate Query<br>DVS Query | 6:43 PM<br>6:44 PM |
| Sept. 6, 2011 | Hubbard | License Plate Query<br>DVS Query | 10:45 PM<br>10:46 PM |
| Oct. 10, 2011 | Wagner | License Plate Query<br>DVS Query | 11:53 AM<br>11:54 AM |
| Dec. 21, 2011 | Buell | License Plate Query<br>DVS Query | 11:57 PM (Dec. 20)<br>12:01 AM (Dec. 21) |

Each DVS query of Mitchell's personal information was preceded by a query of her license plate.[2] The five officers conducted numerous license plate queries during their respective shifts on the days and nights in question — i.e., Mitchell's plate search was one of many plate searches made by each officer during his patrol shift. *See* ECF No. 167-1. These plate searches were often followed by DVS searches. However, for three of

---

[1] Officer Melander made two October 1, 2009 queries at 11:44 PM, but these are treated as a single query. "[S]equential accesses occurring within a several-minute time span should be considered as one obtainment rather than several." *Tichich v. City of Bloomington*, 835 F.3d 856, 867 (8th Cir. 2016).

[2] Plate queries generate information such as the vehicle owner's name and license number. *See* Hubbard Dep. 20-21.

3

the disputed accesses — October 4, 2009 (Schultz), October 10, 2011 (Wagner), and December 21, 2011 (Buell) — the DVS search for Mitchell was the only DVS search that the officer conducted during his shift. *See* ECF No. 196 at 4, 14.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court views the record and all justifiable inferences in favor of the non-moving party. *Liberty Lobby,* 477 U.S. at 255.

## DISCUSSION

The DPPA protects "personal information" contained in motor vehicle records. "Personal information" is defined as "information that identifies an individual," and includes a person's photograph, social security number, driver identification number,

4

name, address, telephone number, and medical or disability information. 18 U.S.C. § 2725(3). Under the law, a state department of motor vehicles and its representatives "shall not knowingly disclose or otherwise make available" personal information "about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a)(1). A state or local agency may, however, use personal information for certain permitted purposes, including "carrying out its functions." 18 U.S.C. § 2721(b)(1). Therefore, to establish a violation of the DPPA, a plaintiff must show that the defendant (1) knowingly (2) obtained, disclosed, or used personal information (3) from a motor vehicle record (4) for a purpose not permitted. At issue here is the "purpose not permitted" prong. The plaintiff in a DPPA action bears the burden of showing that her information was accessed for such an impermissible purpose. *See Kost v. Hunt,* 983 F. Supp. 2d 1121, 1133 (D. Minn. 2013).

Edina makes three principal arguments for summary judgment. First, it asserts that Mitchell has failed to show that any of the DVS searches were for a purpose not permitted under the DPPA. Second, it contends that the officers are entitled to qualified immunity. And third, it argues that even if the searches were improper and its officers are not entitled to qualified immunity, the City is neither directly nor vicariously liable for its officers' conduct.

The City's motion is granted in part and denied in part. Summary judgment is granted for four of the seven disputed accesses, but not for the searches conducted on October 4, 2009 (Schultz), October 10, 2011 (Wagner), and December 21, 2011 (Buell).

For those three queries, Mitchell has met her burden of showing that the purpose was impermissible. The City's qualified immunity and liability defenses also fail as to those three searches.

### A. Impermissible Purpose

Mitchell's impermissible purpose argument centers on her claim that she was not driving in Edina when any of the seven contested DVS accesses occurred. She contends that because she was at work during each of those times, the officers had no legitimate reasons for conducting searches of her license plate, let alone her personal information. In support of this claim, Mitchell points to her deposition testimony and several pieces of documentary evidence that, she maintains, confirm her whereabouts at the times in question. Even viewed in the light most favorable to Mitchell, however, this evidence fails to show that she was at work when the seven contested accesses occurred. For example, Mitchell contends that she worked night shifts on the days that several of the accesses were made. *See* Mitchell Dep.55- 57; Pl.'s Mem. Opp'n Summ. J. 16. But those accesses occurred after 11:00 p.m., the time when Mitchell indicated a night shift might end. Mitchell Dep. 59. Likewise, with regard to the remaining searches, neither Mitchell's testimony nor any of the evidence in the record establishes that she was at work during the times in question. At best, it suggests that she was working on the days when the searches occurred, but not at those times. *See* Mitchell Dep. 65-66, 69-70, 76. Accordingly, a reasonably jury would not be persuaded that any of the seven accesses

violated the DPPA simply on the basis of Mitchell's argument that she was at work when they were conducted.

However, the fact that Mitchell may not have been at work when the contested accesses occurred does not settle the question of whether those accesses were improper. Indeed, even if Mitchell *was* driving in Edina at these times, and even if the search of her license plate was prompted by a legitimate law enforcement-related concern, the follow-on DVS search of her personal information could still be impermissible. For example, an officer might have seen Mitchell's car, conducted a license plate search, recognized her name, and then — out of idle curiosity, and not for law enforcement purposes — conducted a DVS search. In this scenario, the DVS query could be a DPPA violation even though the plate search that preceded it was part of a legitimate law enforcement practice. In other words, while it is true that plate-first searches are presumptively less suspicious than searches directly by name, *see Tichich v. City of Bloomington*, 835 F.3d 856, 869 (8th Cir. 2016); *Mallak v. Aitkin Cty.*, 9 F. Supp. 3d 1046, 1049 (D. Minn. 2014), the fact that a plate search occurs before a name search does not automatically immunize the DVS search against a DPPA claim.

Against this background, the crucial inquiry in Mitchell's case is not whether she was driving in Edina during the searches, but whether the officers in question routinely conducted DVS searches after license plate lookups. If they did, it would lend support to the City's claim that the searches of Mitchell's records were proper. If they did not, it would suggest that the query of her personal information was not a regular part of the

7

officer's patrol practice, as the City maintains, but that she was in fact singled out for an improper DVS query.

The testimony relating to this key issue is inconclusive. Several officers testified that they would often — or at least sometimes — run DVS searches after plate searches. Melander Dep. 31; Schultz Dep. 21-23; Wagner Dep. 23-25. These officers claimed that they did this because the two databases often offered conflicting information, so a more thorough search of both sources was beneficial. *See, e.g.*, Schultz Dep. 39. On the other hand, at least one officer testified that he could not identify any reason why a DVS search would be performed if the plate search yielded no suspicious information. Hubbard Dep. 24. This was corroborated by testimony from Jeff Elasky, the Edina Police Department's Deputy Chief. Elasky Dep. 172. On balance, then, the testimonial evidence does not establish whether it was part of the officers' routine practice to conduct DVS searches after plate searches.

However, the record contains documentary evidence showing that at least some of the DVS searches were isolated to Mitchell. For four of the searches — October 1, 2009 at 11:13 p.m. (Melander); October 1, 2009 at 11:44 p.m. (Melander); July 19, 2010 at 6:44 p.m. (Hubbard); and September 6, 2011 at 10:46 p.m. (Hubbard) — the Mitchell DVS query was one of many such DVS queries that the officers conducted on the heels of a plate lookup. ECF No. 196. But in three instances — October 4, 2009 at 10:46 p.m. (Schultz); October 10, 2011 at 11:54 a.m. (Wager); and December 21, 2011at 12:01 a.m. (Buell) — the Mitchell DVS query was the *only* DVS lookup that the officer conducted

8

during his entire patrol shift, despite having conducted numerous plate searches. ECF No. 196 at 4, 14. For these three accesses, therefore, the City's claim that Mitchell's DVS query was a routine part of each officer's patrol regimen is untenable. A reasonable jury, faced with these facts, could easily conclude that Mitchell was singled out for reasons unrelated to official police business, and that she had therefore met her burden to show impermissible purpose.

Accordingly, summary judgment as it relates to the accesses of October 4, 2009, October 10, 2011, and December 21, 2011 — where the DVS hit on Mitchell was the only such search performed by the officer that day — is denied. For the other four searches, where the Mitchell DVS queries were part of a broader and more routine name-after-plate practice, summary judgment is granted.

### B. Qualified Immunity

The City argues that its motion should also be granted because the officers are entitled to qualified immunity. Qualified immunity protects government officials from liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). To determine if qualified immunity exists, courts deploy a two-part analysis: (1) whether the facts alleged by the plaintiff show a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts can address these prongs in whichever order they deem

appropriate based on the circumstances of a case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the four searches where Mitchell has failed to show an impermissible purpose, the Court need not reach the qualified immunity argument because summary judgment is appropriate on those claims for the reasons set forth above. However, for the Schultz, Wagner, and Buell searches, the facts alleged show a violation of the DPPA, thereby resolving the first question of the qualified immunity analysis. As to the second question, the Court finds that the DPPA was clearly established between 2009 and 2011. *See Collier v. Dickinson*, 477 F.3d 1306, 1311-12 (11th Cir. 2007); *Rollins v. City of Albert Lea*, 79 F. Supp. 3d 946, 970 (D. Minn. 2014). Accordingly, for the three surviving claims, qualified immunity is denied.

### C. Direct Liability

The City's argument that it is not liable for the accesses of its employees fails as well. Edina contends that it can only be directly liable if the City itself knowingly obtained Plaintiff's DVS information for an impermissible purpose. This is an accurate interpretation of the DPPA. *See Rollins v. City of Albert Lea*, 2016 WL 6818940, at *12 (D. Minn. Nov. 17, 2016). The City is also correct that there is no evidence that Edina knowingly provided the officers with access to Plaintiff's personal information for improper purposes. However, while it is true that the City is not directly liable as a matter of law, the City is vicariously liable as it relates to any impermissible searches by its officers. *See Rollins*, 2016 WL 6818940, at *12; *Taylor v. City of Amboy*, 2016 WL

5417190 at *2 (D. Minn. Sept. 27, 2016); *Engebretson v. Aitkin Cty.*, 2016 WL 5400363 at *8 (D. Minn. Sept. 26, 2016). Accordingly, the City's efforts to defeat summary judgment on the basis of a liability argument do not succeed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [ECF No. 163] is GRANTED IN PART and DENIED IN PART.

2. The Motion is GRANTED as to the alleged DPPA violations that occurred on: October 1, 2009; July 19, 2010; and September 6, 2011.

3. The Motion is DENIED as to the alleged DPPA violations that occurred on: October 4, 2009; October 10, 2011; and December 21, 2011.

Dated: January 8, 2018               **Joan N. Ericksen**
                                     JOAN N. ERICKSEN
                                     United States District Judge